United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Good afternoon, Council. We're proceeding this afternoon first in the case of United States. Lyston, are you ready? Yes, thank you, Your Honor. May it please the Court, Jenny Lyston for Juan Velasquez. Your Honors, this appeal requires you to answer two questions. First, what do the guidelines mean by the term suspended sentence? And two, was Mr. Velasquez's sentence suspended? We believe that it was, and that the District Court therefore erred in applying the Sixth Level Enhancement under 2L2.1B3C. So what is a suspended sentence? The courts that have looked at this question agree that a suspended sentence is, quote, a sentence postponed so that the convicted criminal is not required to serve time unless he or she commits another crime or violates some other court-imposed condition. Courts likewise agree that the defining characteristics of a suspended sentence are, one, the offender is released from incarceration but remains subject to a postponed prison term. Two, such release does not arise through discretionary executive action. And three, the released offender is under a continuing obligation such that if he offends, he will be the postponed prison term will be triggered and he must serve it out if he violates. And I don't know why... Yes, Your Honor. Could you answer for us whether this is a question of North Carolina law that we have before us here today? Whether the defendant was serving part of his prison sentence when he was on supervised release? So, Your Honor, North Carolina law certainly informs this court's decision, but this court does not, of course, defer to state labels to determine, to interpret the guidelines. And so we, of course, have to determine sort of how North Carolina treats these sentences, but we don't defer to how North Carolina characterizes such sentences. Right. And the reason why I was asking the language in United States v. Barlow. Yes. She says that North Carolina places... And this is at page 138 of the opinion. She says, North Carolina places time spent on post-release revision within, not outside of, the maximum term of imprisonment. So that's what I was concerned with when I was asking you about whether we have an issue of state law here. And so, Your Honor, if there's one thing I want to make clear today is that Barlow does not decide this issue. Barlow is a statutory interpretation case and dealing with the definition of a felony for purposes of 922G. To put it in the guideline context, and it wasn't a guideline case, but to put it sort of in the guideline context for today, Barlow is essentially addressing what is a sentence of imprisonment for purposes of 4A1.2B1. And if that were the issue today, if I was coming in here contending that Mr. Velazquez didn't receive a term of imprisonment of 17 months, absolutely, Barlow would foreclose that issue. That's not the issue here today, though. It's a question of B2. Was any part of that term of imprisonment of 17 months? So when you look at the defining characteristics of a suspended sentence and then consider how that operates under North Carolina law. So when you consider those defining characteristics that I just talked about, the nine-month period that Mr. Velazquez spent on post-release supervision functionally operates as a suspended sentence. First, the offender is released from incarceration, and for nine months before the final termination of his sentence, and that nine-month prison term is postponed. And that's under NCGIN Step 15A-1368.2. Second, that release is mandatory under the law. The statute mandates it, and it is built into the court's judgment. It's not a discretionary decision. That release must happen. So it's not the governor calling up the Department of Corrections and saying, I want to pardon Mr. Velazquez. It's not the Department of Homeland Security saying that we want to deport him, so we would like you to release him. It happens through the court's judgment as a matter of law. The offender, importantly, cannot risk it. Excuse me, Your Honor. Doesn't that argument cut both ways, though? Because ordinarily a suspended sentence is something that's subject to the discretion of the court. But if something has to happen, generally, that's part of the term of imprisonment, isn't it? So, Your Honor, I believe respectfully I would disagree that to qualify as a suspended sentence, it must necessarily rest with the discretion of the court. I agree with you that it does have to be imposed through the court, but it's not necessary, just because the court, at least the cases that I have read, don't talk about that this must be a discretionary decision by the court or else it doesn't qualify as a suspended sentence. It is implemented. The court's judgment is implementing state law, and so that's why I say it's sort of baked into the judgment. The court doesn't have to say, yes, Your Honor. Can I follow up with that, just to make sure I understand your point? You gave the three conditions that you believe make a suspended sentence, and the second of them was in the negative, right? That it may not involve the discretion of the executive. Correct. Right? And I think I gather, and I understand perhaps what Judge Keenan is getting at, is that we naturally think of suspended sentences, instead of being not the executive's discretion, we think of it as an affirmative, that that requirement really captures that it is the discretion of the sentencing judge. And so, what is the authority? I understand you say generally that this is what the cases say, but what is the best authority that I can look at that would point me to say that that second element you've identified is the negative about the executive, as opposed to the affirmative discretion of the sentencing judge? That's the point of this that I'm having trouble with. I think of it as the sentencing judge's discretion as being, what is it, the core aspect of a suspended sentence, not the lack of executive discretion. So, what am I looking at to convince me on that? So, Yorna, I don't think I can point you to any single case that says, that affirms the negative as I have posited it, as opposed to the positive. I will say this, the suspension of the sentence here, I think what's important to realize is that the only thing that places Mr. Velasquez into the custody of the Department of Corrections is the state court judgment. And by the same token, the only thing that releases him from that state court, from the Department of Corrections, is the state court judgment. No one else is involved here. That's not right. So, just to be clear, that's actually incorrect, because what takes him out of prison is the state court judgment and a state statute. It's the operation of the state statute is what takes him out of custody, not the operation of the judgment. If the judgment said, four years suspended to time served, then that's the judgment that's taking him out of prison. What you have is a statute taking him out. It's not the judgment that's taking him out. It's a statute. So, Your Honor, respectfully, I would say that the only thing that the Department of Corrections is going to look at to release Mr. Velasquez is that state court judgment. Because the statute mandates it, the only thing they're going to look at is, okay, how much time did the state court judge give to Mr. Velasquez? Okay, this is how long it's built in to this judgment, into this sentence. We know that he has to be released nine months prior to that time. So, yes, Your Honor. Were you finished? You go ahead if you want. No, I'm finished. Thank you. Okay. Ms. Leston, if you look at North Carolina General Statute Section 15A-1351, it talks about suspended sentences and says that the court may suspend the term of imprisonment and place the defendant on probation. Well, that's not what happened here. Your Honor, I believe that that... The term of imprisonment, as you say, the term of imprisonment was defined by law, and it wasn't a discretionary act of the court suspending any term and placing the defendant on probation. And, Your Honor, I do not dispute that there were other avenues by which a court could suspend the sentence, and I think that's a red herring. I don't think the issue today is whether there are other ways in which a sentence can be suspended under North Carolina law. What we're looking at today is simply whether this particular method, basically, functionally operates as a suspended sentence, and we believe that it does. And it's not happening through any other avenue other than the state court sentence and the state court judgment. Yes. Can I ask a variation on that as well? So, I understand your point that North Carolina's law is informative but not controlling. And, you know, as Judge Keenan just pointed out, the 1351 says the court may. You know, the court has the discretion, and that's what makes the suspended sentence. Are you aware of any other state that defines suspension of a sentence without reference to what the court may, in its discretion, do? So, in other words, does anybody else use the phrase suspended sentence to cover what we're talking about here? I understand maybe North Carolina's doesn't control, but if everybody else uses it in the same way, then that starts to look like very powerful evidence of what suspended sentence actually means, doesn't it? So, Your Honor, I mean, I will say that the courts looking at this issue don't, when determining whether or not a sentence is suspended, they don't limit themselves to considering only whether or not the state court actually said this was a suspended sentence. And I provided the example of the Salazar-Balsadua case in which the court considered whether or not the, under Kentucky law, whether the conditional discharge amounted to a suspended sentence. And there the Fifth Circuit said, yes, it did, because basically, Kentucky law treated this, more or less, as a suspended sentence. And even though the district court, or even though the state court didn't call it that. So, I don't believe. Can I go back to, okay, I understand the premise, but on the factual question, are you aware of any state that defines suspended sentence like North Carolina does in 1351 to be something other than the discretionary act of the sentencing judge? Uh, no, Your Honor, I'm not aware. Um, so, Your Honor, I, I understand, I understand the court's concern here. But when you, again, when you look to, when you look to North Carolina state law, the way that it operates, this nine month period operates as a suspended sentence. Importantly, the time spent while on post-release supervision, the offender gets no credit for that time towards that postponed prison term. So, they can, so they can be released and serve eight and a half months on post-release supervision. And if at that eight and a half month mark, they mess up, they're going to go back and serve the entire nine month period. So, I think that just goes to show that this, this is not some sort of and it arises through the district court's judgment. No one else, no action by the executive interferes or causes that release of the individual to post-release supervision. And, and we've already talked about how, uh, just because North Carolina doesn't call it a suspended sentence, doesn't necessarily, uh, uh, doesn't bind this court's hands in determining whether or not, uh, it is in fact a suspended sentence. When the court imposed that six to 17 month sentence, it knew that Mr. Velazquez was going to be released the final nine, the nine months prior to the expiration of his sentence. So, it didn't need to put anything into the judgment that said, okay, the final nine months he's going to be released because again, it operates through the function of law. Um, and so if he had wanted Mr. Velazquez, if the district court wanted Mr. Velazquez to serve a longer term of active incarceration, it could have within a certain amount of discretion imposed a longer sentence to ensure that he received a longer active term of incarceration, of actual incarceration. So again, Your Honor, I, I would just contend that it's the fact that it is not necessarily a discretionary decision by the judge, that it operates, uh, through North Carolina law, doesn't mean that this is not a suspended sentence. Your Honor, we believe that when you apply those defining characteristics, um, that you will find that this is a suspended sentence. And, um, unless this court has any other questions, um, that's pretty much my argument. All right. Thank you, counsel. We'll hear from Mr. Bragdon now. And then you'll have rebuttal time after this. Thank you, Your Honor. Good afternoon. May it please the court. My name is David Bragdon, and I represent the United States in this matter. Based on a couple of the questions asked, I wanted to first highlight that North Carolina does have a sentence, a standard system for suspending sentences. And it is different from post-release supervision in two key ways. The first ways, as this court has noted, is that the, in suspending a supervised release sentence, that is done completely through the judge. So, the judge decides to impose a suspended sentence. There's some discretion based on the, uh, the type of felony the defendant has, his criminal history, and in some cases, an active sentence is required. In a lot of cases, the judge has a choice as to whether or not to impose an active sentence or a suspended sentence. Similarly, when it comes up for revocation, that is also completely done by the court. The revocation process has to come back to the judge. Oftentimes, it's the same judge, and that whole process is done by the court. In contrast, the administration of post-release supervision is done by the executive. It's the post-release supervision and parole commission that administers it. This was, uh, talked about some in the, in the last part of the Barlow decision. Um, but by operation of law, it's, it's not any decision by the court, but it's by operation of law that this nine months is set, and any revocation, any change, the conditions themselves, all of that is done through the executive. The, the second important distinction that, yes, your honor. Before you get to the second one, um, your, your colleague, um, gave the example that, you know, a nine-month release that we have here at, at month eight and a half, uh, if there's a violation, um, that the law provides that that violator can then be put back in prison for nine months, um, as opposed to only the time remaining on the sentence. Is that your understanding of how this works? I, I may have just been misunderstood. I just want to make sure I understand the structure. Um, I was under the impression that it's only the time remaining on the maximum sentence, so that if you violated eight and a half months, you can only go back to prison for, for two weeks. Is, am I misunderstanding that? Your honor, I do believe that Ms. Slyston is correct on that point. Um, it, it surprised me as well, but when I, when I looked at the statute, and I, I'm sure we could, I don't have a citation handy in front of me, but when I was reading some of the commentary, it did say that when the court is, when the parole commission is revoking that, that condition, they can give any of the unserved, uh, sentence of imprisonment. And so, um, in a sense, um, if the defendant has served five, six, seven months of their, um, of their post-release supervision, the court may still impose up to nine months in prison. So that, that is factually accurate. Uh, so the, the second thing I wanted to point to is, is I think this court has emphasized the importance of looking at the judgment. And we see that in Barlow, where they look at the And in this case, North Carolina has two separate judgment forms. It has a judgment form for a suspended sentence. It has a judgment form for an active sentence. And the court can see examples of both of these when it, when it looks at the, the record in the Barlow case. Um, and I've, I've got the references to the joint appendix in the Barlow case if the court wants But both of those types were in the record there. And on the suspended sentence judgment, it is entitled, and let me just make sure, um, let me make sure I get this exactly right. But it basically, um, specifically says that it's a judgment for a suspended sentence. And it then Yes, Your Honor. Um, I just want to clarify one point that you made and make sure I understand. Let's say, uh, taking Ms. Lyson's example, that someone is out on post-release supervision and after eight months violates the terms and conditions. Okay. Who imposes the time back on him? Did you say that it was the parole commission that does that? The executive? The parole commission, Your Honor. Okay. So it's not, the court has no role in deciding whether to reimpose that term? That is my understanding, Your Honor. There is discussion of that in Barlow and I've reviewed the statutes. Um, there, and it does appear that it is the parole commission. Initially, there's a preliminary hearing before the parole commission that provides, they find probable cause, which lasts 45 days. And then there has to be a hearing before the parole commission where they would then decide whether or not to revoke the post-release supervision. So you're saying that the, uh, the trial court under North Carolina law plays no role in the understanding, Your Honor. Um, it does not play a role and, and that, that makes it very distinct from a suspended sentence under North Carolina law. Um, and, and I think, I mean, I think in, in Ms. Lyson's reply brief, she does note some of these courts and other circuits that talk about the importance of the judicial role in imposing, uh, a, um, suspended sentence. And I think if that's true, if we accept that as, as the appropriate framework, it matters here that really this is being administered by the executive. It's being revoked by the executive as opposed to supervised release under, under North Carolina law, which is, which is done through the court system. The, the other thing I'll mention, and I would like to, there was, um, there was an unpublished decision that, uh, that came out in May, that we did not, uh, cite in our brief because it came out after our brief came out. But it's United States versus Gonzales-Ferritiz and it's 813 F Appendix 837. And in that case, the, the court addresses a Pennsylvania situation where, um, the, the court set, the Pennsylvania court had sentenced Gonzales to a minimum term of time served and a maximum of 23 months. Um, so similar to here, there was a minimum and a maximum, but as part of the judgment, it also granted immediate parole as a specific condition. And so it was clear from, from the court's, from the Pennsylvania court's decision at sentencing that the defendant was going to be released. And so the defendant argued that his immediate parole was a suspended sentence under the guidelines and shouldn't be used in calculating the guideline range. And like the defendant here, he argued that it functionally qualified as a suspended sentence. Um, he said the court's order created no possibility that he would serve a sentence over 13 months in prison. Um, but the court rejected that argument and it said, you know, we're looking at the minimum and maximum that are in the judgment. And, uh, we see no, no basis to accept the defendant's argument that the functional effect of a sentencing order rather than the language used in the sentencing judgment defines a, uh, a suspended sentence under the guidelines. The court then, this court then went on to compare that the parole to, um, a suspended sentence under, under incarceration under Pennsylvania law. And they said, well, parole is a conditional release from sentence while probation is a suspended sentence of incarceration served on such terms and conditions as imposed by the sentencing court. And so it found that distinction mattered. And I think there's similar distinctions here between North Carolina suspended sentence and North Carolina, um, post-release supervision. Uh, the other thing I'll mention is when the North Carolina court imposes a suspended sentence, it also suspends post-release supervision. So if you, uh, if you say that post-release supervision is a suspended sentence itself, then you have a suspended sentence within a suspended sentence, um, which I think is, would be kind of odd. I think it more, makes more sense to see post-release supervision as, as something different. I think, um, I think Barlow is important because Barlow teaches us that we, we, we look at the judgment as important and how the state characterizes and defines the sentence is important. And here in North Carolina found that, uh, this post-release supervision was part of the term, term of imprisonment. At this point, I'll, I'll take, uh, any other questions that the court has, but if, if there's no further questions, I will rest on a brief and ask the court to affirm. All right, sir. Thank you very much. Um, Ms. Leiston, do you have a rebuttal? Yes, your honors. Thank you. Um, Judge Richardson, you had asked about, um, that, uh, citation to, uh, authority for the, for that the supervisee doesn't receive any credit. And I can, I can provide that citation that is NC GENSTAT 15A-1368.3C2, which says the supervisee shall not receive any credit for days on post-release supervision against the maximum term of imprisonment imposed by the court. And so it is true as well that, um, the, the commission does determine whether or not to send offenders back to serve that, uh, term of imprisonment. But I would also say that this court made it very clear in Barlow that that going back and serving that postponed prison term, that is part of the original term of imprisonment imposed by the court. So it is, they're not being, they're not being, um, they're not going to prison for their violation. They're going to prison to serve out the remainder of their postponed prison term. And I would also point out that Barlow, um, makes very clear that it, it, we're, we do not allow North Carolina, we're taking North Carolina law into account, but we're not allowing North Carolina labels to dictate this court's decisions. And it, because... Can I ask a question on this, on this point about the commission, uh, imposing some additional sentence? Does, does the statute indicate that it's, that the commission may impose up to the remaining time left on the maximum? So in other words, couldn't the commission impose instead of the full nine months, couldn't the commission impose six months or three months? It depends on the violation, your honor. So if the, the two violations trigger the full nine months, so, and that's absconding or committing new criminal conduct, uh, lesser violations trigger lesser periods to serve on that term of imprisonment. But the commission's making that decision under whatever sort of structure it wants to, which doesn't look exactly like it's sending it back to finish out the, the full term of incarceration. They're just making a judgment about how long they should go back. But this court specifically said in Barlow, your honor, that when the commission does that, it's not, it's not doing that to, um, to, to punish the person for their violations. They're sending them back to serve out the original term of incarceration. Um, and, you know, in Barlow, the defendant of course, was arguing that post release supervision is supervised release. And this court said, we understand that North Carolina calls it post release supervision, but that's not actually what it is. It's part of the term of imprisonment. And we, and this court rejected the defendant's argument that that label, the way North Carolina called it post release supervision meant that it was actually post release supervision. They said it fell within that term of imprisonment and rejected the label that North Carolina applied to it. So we believe that people on post release supervision don't, since they're not receiving any credit towards that postponed prison term. We think that's just one more reason why this operates as a suspended sentence and not, um, um, that it operates as a suspended sentence, Your Honor, under, under the definitions that we have provided. So we would ask respectfully, Your Honors, that you reverse the district court's judgment here and, um, return the case for resentencing without the enhancement. Thank you, Your Honors. All right. Thank you very much, Ms. Lyson. And, uh, we'd like, the panel would like to thank both counsel for your participation today. We know there's some logistical difficulties in making all this happen, and, uh, you've been a very important part of our success today. So thank you very much. We've enjoyed hearing you. Look forward to seeing you in Richmond again. Yes. Thank you. Thank you.
judges: Barbara Milano Keenan, Julius N. Richardson, William B. Traxler Jr.